UNITED STATES of America,
Appellee–Cross–Appellant,

v.

John W.S. McCORMICK, Defendant–
Appellant–Cross–Appellee.

Nos. 694, 854, Dockets 92–1470, 92–1482.

United States Court of Appeals,
Second Circuit.

Argued Feb. 18, 1993.

Decided April 28, 1993.

Bobbi C. Sternheim, New York City (Barry M. Fallick, Rochman Platzer Fallick Rosmarin & Sternheim, of counsel), for defendant-appellant-cross-appellee.

John M. Conroy, Asst. U.S. Atty., Burlington, VT (Charles A. Caruso, U.S. Atty., David V. Kirby, Chief, Crim. Div., of counsel), for appellee-cross-appellant.

Before: OAKES, ALTIMARI and MAHONEY, Circuit Judges.

OAKES, Circuit Judge:

This appeal raises the question whether the Double Jeopardy Clause prohibits the

conviction and imposition of a sentence for an offense where the same offense was used in a prior proceeding to increase the defendant's offense level under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). Defendant John McCormick appeals and the government cross-appeals an order by the United States District Court for the District of Vermont, Franklin S. Billings, Jr., *Judge,* granting in part and denying in part a motion by McCormick to dismiss a 41–count indictment on double jeopardy grounds. The district court determined that those counts, and only those counts, of the Vermont indictment that had been used to determine McCormick's sentence in a separate Connecticut proceeding had to be dismissed. *United States v. McCormick,* 798 F.Supp. 203 (D.Vt. 1992). For the reasons set forth below, we affirm.

## BACKGROUND

McCormick was charged in the District of Connecticut with bank fraud and related crimes in a 31–count indictment. The loss resulting from these crimes totaled approximately $75,000. A few months later, McCormick was charged in the District of Vermont with bank fraud, mail fraud, and related crimes in a 41–count superseding indictment. The losses resulting from these alleged crimes exceeded $4 million. Following a jury trial, McCormick was convicted on all counts in the Connecticut indictment.

At sentencing, the government filed a sentencing memorandum describing not only McCormick's fraudulent conduct in Connecticut but similar schemes to defraud that allegedly took place in other states, including Vermont. These other schemes were offered as relevant conduct pursuant to Guidelines § 1B1.3(a)(2). This section directs the sentencing court, when determining the amount of loss for the purpose of calculating the offense level for fraud, to consider acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction...." U.S.S.G. § 1B1.3(a)(2). Accordingly, the government argued that the loss arising from McCormick's conduct fell

between the $2½ million to $5 million range, calling for a 13–level increase from the base offense level of six for fraud convictions. *See* U.S.S.G. § 2F1.1(b)(1)(N).[1]

In the government's communications with the Connecticut district court concerning sentencing, the government addressed the possibility several times that the use of the Vermont conduct in sentencing would preclude further prosecution of McCormick in Vermont for that conduct. For example, the United States Attorney's Office for the District of Connecticut represented in a letter to the court that "[a] sentence based in part on the Vermont conduct will have the effect of barring further prosecution on the Vermont charges." The letter further stated that, if the district court accepted the offense level enhancement based on the Vermont conduct, the "United States Attorney's Office for the District of Vermont feels that although such a sentence would preclude the defendant's conviction on additional felony counts in their District, the ends of justice will have been served...." At the sentencing hearing, the government partially retreated from these statements, claiming that the U.S. Attorney's Office in Vermont was unsure whether it would be barred from further proceedings but that it would "not be likely to pursue their charges...."

The Connecticut court accepted the government's argument and increased McCormick's offense level by 13. Moreover, the court added two more offense points for "more than minimal planning," pursuant to U.S.S.G. § 2F1.1(b)(2), creating a total offense level of 21. The Guidelines sentencing range based on an offense level of 21 and a criminal history category of I, McCormick's category, is 37 to 46 months. The court sentenced McCormick to the top of this range, ordering him to serve concurrent terms of 46 months on each count of the conviction, in addition to a 3 year term of supervised release and restitution. This court by summary order affirmed McCormick's sentence, thus holding that the district court in Connecticut did not err by considering the Vermont frauds in calculating McCor-

---

1. Excluding the Vermont conduct, McCormick's offense level would have been subject to a 5–level increase for a loss exceeding $40,000. U.S.S.G. § 2F1.1(b)(1)(F).

mick's sentence. *United States v. McCormick,* 969 F.2d 1042 (2d Cir.1992) (Table).

Following the Connecticut sentencing, McCormick submitted a motion to the Vermont District Court requesting that the Vermont indictment be dismissed on the grounds that prosecution would violate the Double Jeopardy Clause of the Fifth Amendment. The district court found that further prosecution was barred by the Double Jeopardy Clause only on those counts that were used by the Connecticut court in raising the offense level. On appeal, McCormick argues that all counts should be covered by the Double Jeopardy Clause and, on cross-appeal, the government challenges the district court's finding that there is any double jeopardy problem at all.

## DISCUSSION

 The Double Jeopardy Clause provides that no one shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Clause protects against both a subsequent prosecution for the same offense after acquittal or conviction as well as multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *see also Ex parte Lange,* 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872 (1873) ("[T]he Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it."). At issue in this case is whether the prosecution of conduct that has already been used to determine a Guidelines offense level violates the multiple punishments prong of the Double Jeopardy Clause.

Few courts have addressed this particular question. The district court and McCormick rely on the reasoning of *United States v. Koonce,* 945 F.2d 1145 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1695, 118 L.Ed.2d 406 and *cert. denied,* —— U.S. ——, 112 S.Ct. 1705, 118 L.Ed.2d 413 (1992). The *Koonce* court identified three issues to be considered in determining whether the Double Jeopardy Clause prohibited the defendant's prosecution for possession of a controlled substance in the District of Utah,

given that the drug possession had already been used to increase the defendant's offense level in sentencing for a separate offense in the District of South Dakota. The court considered whether increasing the offense level in light of the related conduct is "punishment" within the meaning of the Double Jeopardy Clause, whether Congress intended a defendant to be subjected to two punishments for that conduct, and whether the imposition of concurrent rather than consecutive sentences avoids double jeopardy issues. The court ultimately found that prosecution on the possession charge in Utah would violate the defendant's constitutional rights.

The district court in Vermont applied the *Koonce* analysis to McCormick's case and found that the Double Jeopardy Clause would be violated if McCormick were punished additionally for any of the counts that the Connecticut court considered in raising McCormick's offense level. We agree with the district court's analysis and findings: prosecution of McCormick in Vermont for conduct that was already incorporated into his Connecticut sentence would be a second punishment, Congress did not intend to allow multiple punishments for this type of conduct, and the availability of concurrent sentences does not eliminate this double jeopardy problem.

██ Application of the first part of the *Koonce* analysis is straight-forward and resolves McCormick's contention that the district court should have granted his motion to dismiss every count of the Vermont indictment. McCormick was punished for the Vermont conduct that was taken into account by the Connecticut court when it determined the amount of loss for which McCormick was responsible. The government requested that the court take this conduct into account, the court explicitly stated that it was taking the conduct into account, and the ultimate sentence reflects part of McCormick's Vermont conduct. Thus, any further prosecution of McCormick for this conduct would subject him to the possibility of multiple punishments for the same conduct. However, those counts of the indictment that did not affect the Connecticut court's Guidelines calculations are not similarly barred from use.

McCormick offers no evidence that the Connecticut court did in fact incorporate the counts that were not dismissed into its calculations and, therefore, prosecution for those counts cannot constitute a second punishment in violation of the Double Jeopardy Clause.

■ The second step of the *Koonce* analysis, determining whether Congress intended to allow the same conduct to be punished under both the Guidelines and a subsequent prosecution, raises the most difficult issue of this case. To begin with, Congress may authorize several penalties for the same act. The multiple punishments prong of the Double Jeopardy Clause limits prosecutorial and judicial action but does not prevent the legislature from assigning multiple punishments for the same conduct. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). As stated by the *Koonce* court, "[i]f Congress did intend multiple punishments for a single act, then for the purposes of Double Jeopardy analysis the combined punishment would simply be viewed as the appropriate punishment determined by Congress to represent the gravity of the offense and it would be upheld." *Koonce,* 945 F.2d at 1150. However, "[a]bsent evidence to the contrary, it is assumed 'that Congress ordinarily does not intend to punish the same offense under two different statutes.'" *Id.* at 1151 (quoting *Ball v. United States,* 470 U.S. 856, 861, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740 (1985)).

An examination of the Guidelines suggests that Congress did not intend to allow additional punishment for conduct that was used to enhance a defendant's offense level. Congress authorized the creation of the Guidelines in significant part to respond to the lack of consistency in sentences imposed by the federal courts and supervised by the Parole Commission. S.Rep. No. 225, 98th Cong., 2d Sess. 38–39 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3221–22. *See also* U.S.S.G., Ch. 1, Pt. A(3), policy statement ("Second, Congress sought reasonable unifor-

mity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders."). As part of the effort to achieve consistency in sentencing, the Guidelines attempt to group similar harms and to standardize the punishment that is to be applied to the conduct as a whole.[2] *See* U.S.S.G. Ch. 1, Pt. A(4)(e), policy statement (multi-count convictions); *cf. United States v. Merritt,* 988 F.2d 1298, 1307–08 (2d Cir.1993) (comparing Guidelines "highly detailed categorization of offense conduct" with the minimal direction provided for evaluating the character of the defendant).

The District of Connecticut's use of McCormick's Vermont conduct to determine McCormick's sentence was accomplished under U.S.S.G. § 1B1.3(a)(2), the Guidelines provision designed to allow courts to account for similar conduct and punish for the aggregate relevant conduct. *See* U.S.S.G. § 1B1.3, comment. (n. 3); *see also* U.S.S.G. § 3D1.2 ("All counts involving substantially the same harm shall be grouped together into a single Group."). This approach of determining a single punishment for a set of similar acts is specifically called for in cases of fraud. *See* U.S.S.G. § 2F1.1, comment. (n. 6) ("The cumulative loss produced by a common scheme or course of conduct should be used in determining the offense level...."). Fraud cases require this special treatment because "federal fraud statutes are so broadly written" that "a single pattern of offense conduct usually can be prosecuted under several code sections, as a result of which the offense of conviction may be somewhat arbitrary." U.S.S.G. § 2F1.1, comment. (backg'd.). Thus, the Guidelines achieve consistency in sentencing for fraud cases by grouping all of the relevant conduct and applying a single offense level to the whole course of conduct.

In light of the purpose and careful shaping of the Guidelines, we do not believe that Congress or the Guidelines Commission intended to allow a defendant to be prosecuted

---

**2.** The policy of grouping similar harms established in the Guidelines also serves to minimize the risk of prosecutorial manipulation of the counts charged in an indictment. The Guidelines state that "the Commission has written its rules for the treatment of multicount convictions with an eye toward eliminating unfair treatment that might flow from count manipulation." U.S.S.G. Ch. 1, Pt. A.4(a), policy statement.

for conduct already used to enhance his or her offense level.[3] To rule otherwise would undermine the purpose of the Guidelines and introduce additional possibilities for inconsistent sentences. As the *Koonce* court stated, "[i]t is difficult to believe that Congress would have intended the punishment to be larger if the government chose to proceed with two different proceedings ... than if it chose to consolidate all of the counts in one proceeding." *Koonce*, 945 F.2d at 1152. Furthermore, consolidation of punishment in a single proceeding avoids the problem of requiring a sentencing court to anticipate whether it is punishing conduct that may also be punished in another proceeding.[4]

The third step in the *Koonce* analysis considers whether double jeopardy questions may be avoided if a second punishment consists of a concurrent rather than a consecutive sentence. As the district court and *Koonce* court realized, this issue was resolved by the Supreme Court in *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). The *Ball* Court recognized that even if a second conviction results in no greater sentence, a "separate *conviction*, apart from the concurrent sentence, has

potential adverse collateral consequences that may not be ignored." *Ball*, 470 U.S. at 865. Among the potential collateral consequences of conviction the Court mentioned are increased sentences under recidivist statutes and the extra societal stigma that comes from conviction, including possibly effects upon other state proceedings, past or present. Therefore, the availability of concurrent sentences does not eliminate double jeopardy concerns.

■ Although we find that the Double Jeopardy Clause precludes McCormick from being prosecuted for conduct that was used to enhance his offense level under the Guidelines, we recognize that at sentencing "justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender." *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 58 S.Ct. 59, 61, 82 L.Ed. 43 (1937). Accordingly, there are a number of cases which have upheld a conviction and punishment for conduct that was previously used to enhance a defendant's sentence for other conduct.[5] Indeed, nothing

---

**3.** The dissent suggests that "§ 5G1.3 recognizes and explicitly addresses the sentencing problem posed by successive prosecutions in which an overall course of conduct is segmented into separate criminal charges...." The problem with this analysis is that § 5G1.3 does not apply to McCormick's situation. Section 5G1.3(b), the relevant provision of § 5G1.3, applies where a defendant's offense level in a second prosecution is set taking into account conduct that has already been the subject of a conviction and sentencing. In contrast, McCormick's first conviction and sentencing took into account conduct that is now the subject of a second prosecution. In the first case, covered by § 5G1.3(b), the Sentencing Commission requires concurrent sentencing in order to avoid multiple punishments. In the second case, presented by McCormick, multiple punishments can only be avoided by precluding a second prosecution.

**4.** The government's conduct in this case lends additional support to the district court's decision to dismiss those counts of the Vermont indictment that were used to enhance McCormick's offense level. Although it is true that at sentencing the government retracted its earlier categorical claim that the U.S. Attorney's Office in Vermont would not pursue additional felony counts in Vermont, the government continued to make statements that may have confused the Connecti-

cut court. For example, after retreating from its earlier claims, the government nonetheless stated that "[i]t would appear that [the U.S. Attorney's Office in Vermont] would not be likely to pursue their charges...." As a result, the Connecticut court may have sentenced McCormick with the understanding that McCormick would face no other punishment for that conduct.

It is thus unfortunate that the double jeopardy issue need be addressed by this court at all. As we have said before, the double jeopardy concerns brought forward by this case would not have arisen if the United States Attorneys' offices in Connecticut and Vermont had followed the customary and better practice of making an agreement that sentencing would be resolved entirely in Connecticut. *United States v. McCormick*, 969 F.2d 1042 (2nd Cir.1992).

**5.** *See, e.g., Williams v. Oklahoma*, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959) (no constitutional bar to considering at sentencing for one offense criminal conduct that was the subject of a separate offense); *United States v. Carey*, 943 F.2d 44 (11th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1676, 118 L.Ed.2d 394 (1992) (two-level increase for obstruction of justice based on defendant's failure to appear does not preclude later prosecution for this act); *United States v. Mack*, 938 F.2d 678 (6th Cir.1991) (de-

we have said should be read as undermining the historic authorization of a sentencing judge "to consider all of the aggravating and mitigating circumstances involved in the crime." *Williams,* 358 U.S. at 585, 79 S.Ct. at 427.

The critical distinction between these other cases and McCormick's case is found in our analysis of congressional intent. If Congress intends to allow the same conduct to be used to enhance a sentence and to serve as the basis for a separate prosecution, the Double Jeopardy Clause does not stand in the way. However, as we have discussed, there is much evidence to suggest that Congress intended to consolidate the punishment for certain conduct, such as fraud, when it created the Guidelines scheme that allows for changes to a defendant's offense level based on related acts. For this reason, the Double Jeopardy Clause precludes any prosecution of McCormick in Vermont based on the conduct used by the Connecticut court to increase his offense level.

## CONCLUSION

Accordingly, the order of the district court is affirmed.

MAHONEY, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from the majority opinion's affirmance of the district court's dismissal, on the basis of double jeopardy, of those counts of McCormick's Vermont indictment that entered into the calculation of the base offense level at his prior Connecticut sentencing. I concur in the majority's affirmance of the district court's refusal to dismiss the remaining counts of McCormick's Vermont indictment.

fendant's failure to appear for sentencing, for which he was later indicted, resulted in sentence in high end of guidance range); *United States v. Williams,* 935 F.2d 1531, 1539 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1189, 117 L.Ed.2d 431 (1992) (enhancement of defendant's criminal history category and imposition of a sentence based on the same conduct does not violate the Double Jeopardy Clause).

1. The majority properly recognizes that in the sentencing area, Congressional intent is reflected in the Sentencing Guidelines. The initial Guidelines were submitted by the United States Sen-

The issue presented by this appeal centers on Congressional intent. As the majority states: "If Congress intends to allow the same conduct to be used to enhance a sentence and to serve as the basis for a separate prosecution, the Double Jeopardy Clause does not stand in the way." The majority concludes, however, that:

> In light of the purpose and careful shaping of the Guidelines, we do not believe that Congress or the Guidelines Commission [1] intended to allow a defendant to be prosecuted for conduct already used to enhance his or her offense level. To rule otherwise would undermine the purpose of the Guidelines and introduce additional possibilities for inconsistent sentences. As the *Koonce* court stated, "[i]t is difficult to believe that Congress would have intended the punishment to be larger if the government chose to proceed with two different proceedings . . . than if it chose to consolidate all of the counts in one proceeding." *Koonce,* 945 F.2d at 1152.

I agree with the majority, and with *Koonce,* that the Congressional/Guidelines intent is not to allow "the punishment to be larger if the government chose to proceed with two different proceedings." The Guidelines specifically address this situation, however, not (as the majority surmises) by an unexpressed but implied bar of a second prosecution, but by directing in U.S.S.G. § 5G1.3 that when, in cases such as McCormick's, the government institutes two criminal proceedings, the resulting term of imprisonment should be the same as would have resulted from a single prosecution.

U.S.S.G. § 5G1.3 provides:

tencing Commission to Congress for its review (including a study by the General Accounting Office) prior to their taking effect. *See* Sentencing Reform Act of 1984, Pub.L. 98–473, tit. II, ch. II, § 235(a)(1)(B)(ii), 98 Stat. 1987, 2031, amended by Criminal Law and Procedure Technical Amendments Act of 1986, Pub.L. 99–646, § 35(2), 100 Stat. 3592, 3599. Similarly, amendments to the Guidelines are submitted for Congressional review, and subject to Congressional modification or disapproval, prior to their taking effect. *See* 28 U.S.C. § 994(p) (1988).

*Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment*

(a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

(b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

(c) (Policy Statement) In any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense.

Subsection (b) of § 5G1.3 focuses upon the consideration in the second (Vermont) prosecution of conduct resulting in the initial (Connecticut) sentence, while the majority opinion is directed to the prior consideration of that conduct in the Connecticut prosecution. These are two sides of the same coin, however, for U.S.S.G. § 1B1.3(a) mandates that the base offense level in *both* proceedings "shall be determined" on the basis of all relevant conduct. The commentary to § 5G1.3 makes clear that whether subsection (b) or (c) is applied, "[e]xcept in the cases in which subsection (a) applies, this guideline is intended to result in an appropriate incremental punishment for the instant offense that most nearly approximates *the sentence that would*

have been imposed had all the sentences been imposed at the same time." U.S.S.G. § 5G1.3, comment. (backg'd) (emphasis added). Further, an application note to this Guideline recognizes that a criminal defendant may be "prosecuted . . . in two or more federal jurisdictions . . . for the same criminal conduct or for different criminal transactions that were part of the same course of conduct." U.S.S.G. § 5G1.3, comment. (n. 2).

Thus, it seems clear, § 5G1.3 recognizes and explicitly addresses the sentencing problem posed by successive prosecutions in which an overall course of conduct is segmented into separate criminal charges, but § 1B1.3 requires that the entire relevant conduct nonetheless be addressed in sentencing at both proceedings.[2] It does so not by barring successive prosecutions, as the majority surmises, but rather by requiring appropriate adjustment of the sentence in the second prosecution to achieve the same term of imprisonment that would have resulted from a single prosecution. In this case, if the Vermont prosecution resulted in conviction only for crimes that had previously been taken into account as relevant conduct in the Connecticut sentencing, a concurrent Vermont sentence would be required. If the Vermont prosecution produced convictions that did not thus overlap with the Connecticut sentencing, an incremental Vermont sentence would be imposed that, combined with the prior Connecticut sentence, would approximate the sentence that would have been imposed in a single prosecution that resulted in the convictions determined in both the Connecticut and Vermont proceedings.

It is noteworthy that in this case, there is a significant, legitimate prosecutorial motive to charge the Vermont frauds in the Vermont prosecution despite their prior role in the Connecticut sentencing. In view of the venue requirements of the Sixth Amendment

**2.** Footnote 3 of the majority opinion rejects this analysis, asserting that subsection (b) is "the relevant provision of § 5G1.3," and that subsection (b) applies only "where a defendant's offense level in a second prosecution is set taking into account conduct that has already been the subject of a conviction and sentencing." This analysis ignores the fact that § 1B1.3 requires all relevant conduct to be addressed in both prose-

cutions, as well as the explanatory commentary to § 5G1.3 that I have cited, which reveals a much broader reach for § 5G1.3 than the majority accords it. By the explicit terms of § 5G1.3, furthermore, assuming *arguendo* that subsection (b) is inapplicable here, subsection (c) then applies "[i]n *any other* case" (§ 5G1.3(c), emphasis added) of a defendant subject to an undischarged term of imprisonment, including *this* case.

and Fed.R.Crim.P. 18, it is highly likely that the Connecticut and Vermont frauds could not have been prosecuted in a single criminal proceeding. Further, restitution could not be imposed in the Connecticut prosecution for Vermont frauds not charged there, whether or not considered in establishing the base offense level in the Connecticut sentencing; the same rule would apply, as to Connecticut frauds, in a Vermont prosecution. *See Hughey v. United States,* 495 U.S. 411, 413, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990); *United States v. Bailey,* 975 F.2d 1028, 1033–34 & n. 1 (4th Cir.1992); *United States v. Young,* 932 F.2d 1035, 1037 (2d Cir.1991).

Thus, wholly aside from terms of imprisonment, the government may well be motivated to prosecute McCormick in Vermont in order to seek restitution as to the Vermont frauds not prosecuted (and most likely *incapable* of prosecution) in the initial Connecticut proceeding. A double jeopardy bar to such prosecutions would run counter to the Congressional purpose underlying enactment of the restitution provisions of the federal criminal code. *See, e.g., United States v. Satterfield,* 743 F.2d 827, 833–36 (11th Cir.1984) (discussing the restitutionary purpose of the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579 and 3580, the predecessors of current §§ 3663 and 3664), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985); *see also* U.S.S.G. § 5E1.1 and commentary thereto (expressing strong policy favoring restitution).

Further, it should be noted that the imposition of a concurrent or incremental sentence in this case pursuant to § 5G1.3 would not run afoul of *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). The majority, following *Koonce,* 945 F.2d at 1153–54, highlights the statement in *Ball* that "[a] separate *conviction,* apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored." 470 U.S. at 865, 105 S.Ct. at 1673. In *Ball,* however, the Court determined that Congress had not intended to allow a dual conviction for possession and receipt of a single firearm when both charges were concededly based upon the same conduct. *Id.* at 864–65, 105 S.Ct. at 1673. Thus,

the contravention of Congressional intent that resulted in a double jeopardy violation was not *cured* by a concurrent sentence. Here, by contrast, a concurrent or incremental sentence, and accordingly the allowance of dual prosecutions that call for them, *follows* Congressional/Guidelines intent as set forth in § 5G1.3.

Finally, I regard the ruling in this case as premature. *See United States v. Koonce,* 885 F.2d 720, 722 (10th Cir.1989) (issue of multiple punishments not ripe for review at pretrial stage); *cf. United States v. Caceda,* 990 F.2d 707, 709 (2d Cir.1993) (sentencing court should not consider outcome of possible subsequent prosecutions) (citing *United States v. Perdomo,* 927 F.2d 111, 116 (2d Cir.1991)). The haste to rule in this case results in an expansive double jeopardy ruling regarding an issue of multiple punishment better addressed, should it subsequently arise, as a misapplication of § 5G1.3. *See* 18 U.S.C. § 3742(a)(2), (b)(2) (1988) (authorizing appeals by defendant or government for incorrect application of sentencing guidelines); *Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985) (" 'Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.' ") (quoting *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693 (1981)).

In sum, because the majority postulates a Congressional/Guidelines intent that is at odds with the actual provisions of the Sentencing Guidelines, I respectfully dissent from the majority opinion insofar as it affirms the district court's dismissal of counts of the Vermont indictment.