IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-1843
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES R. CRUCE and THOMAS A. BURGER,

Defendants-Appellants.

_____

Appeals from the United States District Court for the
Northern District of Texas

_____

(May 3, 1994)

Before GOLDBERG, JOLLY, and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Cruce and Burger face a criminal prosecution, which they seek to bar on grounds of double jeopardy. They have been previously convicted and sentenced in Kansas for a bank-fraud conspiracy involving a savings and loan. They now stand indicted in Texas for a bank-fraud conspiracy affecting the same institution. They contend that the Texas prosecution is barred by the Double Jeopardy Clause because the conduct that now constitutes the basis for the Texas prosecution was previously considered in Kansas as relevant conduct under the Sentencing Guidelines. We hold that the Double Jeopardy Clause does not bar punishment of the Texas conspiracy

offense.  This is true for the simple reason that the Texas offense is separate and distinct from the Kansas offense.  Accordingly, we affirm the district court's ruling denying the defendants' motion to dismiss the indictment and remand the case for further prosecution.

I

**FACTS AND PRIOR PROCEEDINGS**

James Cruce was the president and a director of Peoples Heritage Federal Savings and Loan Association ("Peoples Heritage"). Thomas Burger was executive vice-president, chief lending officer, and a director of Peoples Heritage.  Cruce and Burger engaged in various schemes at the expense of Peoples Heritage and its federal insurer, the Federal Home Loan Bank Board (the "FHLBB").

In Kansas, on January 10, 1991, a federal grand jury returned two indictments against Cruce and Burger for various crimes concerning their dealings with Peoples Heritage and the FHLBB from 1984 through 1990.  The first Kansas indictment charged Cruce and Burger, along with four other defendants,[1] with a bank-fraud conspiracy under 18 U.S.C. § 371 and 18 U.S.C. § 1344, and making false statements to the government in violation of 18 U.S.C. § 1001.  The second Kansas indictment charged Cruce, Burger, and five

---

[1]Thomas Dunn, Roy Gressett, James Savage, and R. J. Fellows are not parties to this appeal.

other defendants[2] with conspiracy to commit bank fraud under 18 U.S.C. § 371, bank fraud under 18 U.S.C. § 1344, aiding and abetting under 18 U.S.C. § 2, and making false statements to the government in violation of 18 U.S.C. § 1001. In exchange for Cruce's and Burger's guilty pleas to the conspiracy and bank-fraud counts charged in the second Kansas indictment, the government dropped all the counts in the first Kansas indictment and the remaining counts in the second indictment.

The Kansas district court adopted the presentence reports in setting Cruce's and Burger's sentences. The presentence reports included a $6.5 million transaction known as the "Flower Mound Loan." This transaction occurred in Texas and was not listed in the Kansas indictments. Cruce and Burger each received the maximum offense level of 24, which U.S.S.G. §§ 2F1.1(a) and (b) provide for losses in excess of $80 million caused by fraud. The presentence reports then enhanced both Cruce's and Burger's offense levels by four points under U.S.S.G. § 3B1.1 because of each defendant's extensive involvement in the broad conspiracy that caused severe damage to the savings and loan and its federal insurer. Other adjustments resulted in offense levels of 34 for Cruce and 33 for Burger. These offense levels, in turn, resulted in prison terms of 168 months for Cruce and 144 months for Burger. Cruce and Burger also received fines of $8 million and $6 million, respectively.

_____

[2]Thomas Dunn, Jr., Sherwood Blount, Jr., Kim Wise, Cathy Cruce, and Joseph Grosz are not parties to this appeal.

## II

## PROCEEDINGS BELOW

On December 12, 1991, a federal grand jury in Dallas, Texas, returned an indictment against Cruce and Burger. The Texas indictment focuses on a conspiracy encompassing three bribe and kickback transactions--including the Flower Mound Loan--that Cruce and Burger allegedly effected with James McClain from 1984 to 1986, as officers of Peoples Heritage. The indictment charged conspiracy under 18 U.S.C. § 371, unlawful receipt under 18 U.S.C. § 215(a), bank fraud under 18 U.S.C. § 1344, wire fraud under 18 U.S.C. § 1343, and misapplication of funds under 18 U.S.C. § 657. Cruce and Burger filed motions to dismiss the Texas indictment on double jeopardy grounds, arguing that the Texas proceeding would result in a second punishment for the conspiracy encompassing the Flower Mound Loan conduct that had been reflected in the Kansas presentence report. The district court denied the motions, and Cruce and Burger filed this appeal.

## III

## QUESTION PRESENTED

In this case, we address the Double Jeopardy Clause as it bars a second punishment for a crime that has already been once punished. The criminal conduct that was not charged or prosecuted in the Kansas case was nevertheless used, as relevant conduct under the Sentencing Guidelines, to enhance the punishment for the Kansas offense. Now, the same conduct is the subject of this Texas

-4-

indictment. We must determine whether a punishment in this case would constitute a second punishment barred by the Double Jeopardy Clause.

## IV

### OVERVIEW OF CONTROLLING LAW

The text of the Double Jeopardy Clause provides, "[N]or shall any person be subject for the same <u>offence</u> to be twice put in jeopardy of life or limb." U.S. Const. amend. V. (emphasis added). The Supreme Court has interpreted the Clause as providing protections against multiple prosecutions and multiple punishments for the "same offense." <u>North Carolina v. Pearce</u>, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). In applying the protections against a second prosecution and a second punishment, the traditional focal point of double jeopardy analysis has been the "offense" for which the defendant is prosecuted and punished-- not the conduct criminalized by, or related to, that offense. In <u>Gavieres v. United States</u>, 220 U.S. 338, 345, 31 S.Ct. 421, 423, 55 L.Ed. 489 (1911), the Supreme Court held that even though the defendant only made one statement, double jeopardy principles did not preclude a second prosecution for that statement simply because the same conduct was involved. This was so because the same conduct constituted two separate "offenses" under the same elements test. <u>Id.</u> Similarly, in <u>Blockburger v. United States</u>, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Supreme Court provided that even though the defendant only made one sale of

narcotics, double jeopardy principles did not preclude a second punishment for the same conduct because that conduct constituted two separate "offenses" under the same elements test. Thus, the focal point of the double jeopardy protections against a second prosecution in <u>Gavieres</u> and a second punishment in <u>Blockburger</u> was the "offense" for which the defendants were prosecuted, convicted, and punished--not the conduct encompassed by those offenses.[3]

---

[3]Despite this traditional focus of both the multiple prosecutions' bar and the multiple punishments' bar on the "offence" (the word specifically used in the Constitution) a short-lived opinion by the Supreme Court shifted the focal point of the multiple prosecutions' bar from the offense to the conduct underlying the offense. In <u>Grady v. Corbin</u>, 495 U.S. 508, 510, 110 S.Ct. 2084, 2087, 109 L.Ed.2d 548 (1990), the Supreme Court imposed an additional conduct test on the <u>Blockburger</u> same elements test for determining if a second prosecution was barred. <u>Id.</u> at 510, 110 S.Ct. at 2087. The conduct emphasis did not last long, however, as the Supreme Court recently--and soundly-- rejected the <u>Grady</u> "same conduct" test in <u>United States v. Dixon</u>, ___ U.S. ___, ___, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993). Thus, instead of achieving consistency in double jeopardy analysis by pivoting the focus of the multiple punishments' bar toward the <u>Grady</u> "same conduct" test, the Supreme Court reasserted that the focus of the multiple prosecutions' bar is the "same offense," as defined by <u>Blockburger</u>. <u>Id.</u> at ___, 113 S.Ct. at 2860. Justice Scalia stated for a majority of the <u>Dixon</u> Court:

> We have often noted that the [Double Jeopardy] Clause serves the function of preventing both successive punishment and successive prosecution, . . . but there is no authority, except <u>Grady</u>, for the proposition that it has different meanings in the two contexts. That is perhaps because it is embarrassing to assert that the single term "same offence" (the words of the Fifth Amendment at issue here) has two different meanings-- that what <u>is</u> the same offense is yet <u>not</u> the same offense.

<u>Id.</u>, at ___, 113 S.Ct. at 2860 (emphases in original) (citations omitted).

Because the Double Jeopardy Clause focuses on the "offense" for which the defendant is prosecuted and convicted, the intent of the legislature is important because it is the legislature that defines the "offense" and prescribes the punishment for that offense.  See Whalen v. United States, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980).[4]  In interpreting these statutes, we use the Blockburger rule of construction under which we presume that when the legislature writes two criminal statutes, and each statute contains an independent element from the other statute, it intends to define two separate offenses that generally entail two punishments.  See Missouri v. Hunter, 459 U.S. 359, 367, 103 S.Ct. 673, 678-79, 74 L.Ed.2d 535 (1983).[5]  Once established, the Blockburger presumption, at least with respect to separate punishments for separate offenses, can only be overcome by a "clear

_____

[4]The Supreme Court stated:

> The Fifth Amendment guarantee against double jeopardy embodies in this respect simply one aspect of the basic principle that within our federal constitutional framework the legislative power, including the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the Congress.

Whalen, 445 U.S. at 689, 100 S.Ct. at 1436.

[5]In Hunter, 459 U.S. at 367, 103 S.Ct. at 678-79, the Court provided that "cumulative punishment can presumptively be assessed after conviction for two offenses that are not the `same' under Blockburger"; (citing Albernaz v. United States, 450 U.S. 333, 340, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981) (allowing separate punishments for conspiracy to import marijuana and conspiracy to distribute marijuana because there was no clear congressional intent not to impose separate punishments)).

indication of contrary legislative intent."  Id. at 367, 103 S.Ct. at 679.

V

**ANALYSIS**

In the instant case, we first determine that Cruce and Burger have established a prima facie double jeopardy challenge that the Texas indictment charges an offense that encompasses conduct considered in setting sentence for the Kansas offenses.  Second, we hold that the Double Jeopardy Clause continues to focus on the Kansas and Texas offenses instead of any conduct related to those offenses.  Third, we hold that the Kansas conspiracy offense is a separate offense from the Texas conspiracy offense, thus, evoking the presumption that Congress intended a separate punishment for each.  Fourth, we hold that Congress has not (in the Sentencing Guidelines) evinced the clear intent necessary to preclude punishment for a separate and distinct offense, even though the underlying conduct has been used previously to enhance another sentence.  In making these determinations, we review Cruce and Burger's legal challenge de novo.  United States v. Deshaw, 974 F.2d 667, 669 (5th Cir. 1992).

## A

## The Prima Facie Case

In order to establish a double jeopardy claim, the defendant must first present a prima facie claim that double jeopardy principles have been violated.  See generally United States v. Goff, 847 F.2d 149, 169 (5th Cir.), cert. denied, 488 U.S. 932, 109 S.Ct. 324, 102 L.Ed.2d 341 (1988); United States v. Stricklin, 591 F.2d 1112, 1118 (5th Cir. 1979), cert. denied, 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979).  Once the defendant proffers sufficient proof to support a nonfrivolous claim, the burden shifts to the government to show that double jeopardy does not bar the proceeding.  Id. at 1118-19.

Cruce and Burger contend that they have met the burden of establishing a nonfrivolous double jeopardy claim by showing that the Kansas district court punished them under the Sentencing Guidelines, at least in part, because of the Flower Mound Loan conduct, which is encompassed in the instant Texas conspiracy charge.[6]  In justifying the four-point enhancement of Cruce's and Burger's offense levels under U.S.S.G. § 3B1.1, the Kansas presentence reports stated that the defendants caused total losses "approaching $149,000,000 [and `exceeding $127,000,000,'

---

[6]Cruce and Burger rely on Tenth and Second Circuit cases, United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1705, 118 L.Ed.2d 413 (1992), and United States v. McCormick, 992 F.2d 437 (2d Cir. 1993), for the proposition that sentencing enhancement based on conduct bars subsequent punishment of offenses encompassing such conduct.

respectively]." These total net loss figures include the $6.5 million loss attributable to the Flower Mound Loan.[7] In response, the government merely offers its conclusory assertion that the Flower Mound Loan did not enhance the defendants' offense levels. The government offers no basis to support this assertion. We therefore hold that Cruce and Burger have established a prima facie double jeopardy claim that the Kansas district court increased their respective sentences because of the Flower Mound Loan conduct and that same conduct underlies the conspiracy offense charged in the Texas indictment. Thus, we will consider the merits of their claim.

**B**

**Is It Significant Whether The Same Conduct Is Involved In Both**

**Kansas And Texas?  The Offense Focus**

Cruce and Burger contend that, as held in United States v. Koonce, 945 F.2d 1145, 1152-53 (10th Cir. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1705, 118 L.Ed.2d 413 (1992), and United States v. McCormick, 992 F.2d 437, 440-41 (2d Cir. 1993), the Double Jeopardy Clause bars this Texas proceeding because it could result

_____

[7]The record reveals the following total net loss figures:

| Losses Relating to Transactions Listed in: | Cruce | Burger |
|---|---|---|
| First Indictment | $ 21,570,000 | $ 21,570,000 |
| Second Indictment | 90,197,577 | 90,197,577 |
| Unindicted Acts[*] | 37,592,953 | 15,898,165 |
| Totals | $149,360,530 | $127,665,742 |

[*]Including the $6.5 million Flower Mound Loan.

in a second punishment of <u>conduct</u> previously punished in a prior criminal trial. This argument fails, however, because it misconceives the focal point of the double jeopardy protection against a second punishment as the <u>conduct</u> considered in setting the Kansas sentence, instead of the conviction <u>offense</u> that prompted the Kansas sentence.

As previously explained, the Double Jeopardy Clause precludes a second punishment for the same "offense," not a second punishment for the same conduct. See <u>United States v. Dixon</u>, ___ U.S. ___, ___, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993); <u>Blockburger</u>, 284 U.S. at 304, 52 S.Ct. at 182.[8] Accordingly, we must address

_____

[8]Despite the holdings, without citation to authority, of both <u>Koonce</u>, 945 F.2d at 1150, and <u>McCormick</u>, 992 F.2d at 439, that an increase in a guidelines offense level because of the consideration of relevant nonconviction offense conduct constituted punishment <u>of the relevant conduct</u>, instead of punishment of the offense of conviction, the traditional focus of double jeopardy punishment analysis has not shifted from the offense. Our review of binding authority confirms this observation.

In <u>McDonald v. Massachusetts</u>, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901), the Supreme Court rejected the defendant's double jeopardy claim that his sentence for his latest crime could not be increased based on prior crimes for which he had already been punished. The Supreme Court reasoned:

> The fundamental mistake of the [defendant] is his assumption that the judgment below imposes an additional punishment on crimes for which he had already been convicted and punished. . . .
> But it does no such thing. . . . The punishment is for the new crime only, but is the heavier if he is an habitual criminal.

<u>Id.</u> at 312, 21 S.Ct. 390; <u>see</u> <u>Williams v. Oklahoma</u>, 358 U.S. 576, 585, 79 S.Ct. 421, 427, 3 L.Ed.2d 516 (1959) (holding that consideration of a prior conviction in sentencing the defendant

-11-

whether Cruce and Burger's Texas conspiracy offense is the "same" as their Kansas conspiracy offense for which they have already been punished.

C

**The Kansas and Texas Conspiracies Are Separate Offenses; Consequently, We Presume They Carry Separate Punishments**

Where the government charges two offenses under the same statute, (here 18 U.S.C. § 371), we must determine, in our double jeopardy analysis, if the offenses are the same in "fact." United States v. Marable, 578 F.2d 151, 153 (5th Cir. 1978), overruled on other grounds by United States v. Rodriquez, 612 F.2d 906 (5th Cir.

---

for a subsequent conviction did not violate double jeopardy principles because the convictions involved separate offenses, and the sentencing judge was "authorized, if not required, to consider all of the mitigating and aggravating circumstances" in setting sentence); Sekou v. Blackburn, 796 F.2d 108 (5th Cir. 1986) (holding no double jeopardy violation occurred when after considering nonoffense conduct in imposing sentence for the conviction offense, the state later tried the defendant for the separate offense that encompassed the previously considered nonoffense conduct). Thus, the Supreme Court and our own precedent confirm that although the Kansas sentence enhancement may _factually_ relate to the Flower Mound Loan conduct considered by the Kansas sentencing court, the enhancement functioned _legally_ to punish only the Kansas conviction offense.

We note further, however, that the Koonce and McCormick Courts may have been influenced by the Supreme Court's short-lived decision in Grady. In Grady, 495 U.S. at 510, 110 S.Ct. at 2087, the Court appeared ready to move toward adopting a conduct focus for both prosecutions and punishments. After the Koonce and McCormick decisions were rendered, however, the Supreme Court reversed Grady. Dixon, ___ U.S. at ___, 113 S.Ct. at 2860. In Dixon, the Court reaffirmed that the focal point of the double jeopardy protections against both multiple prosecutions and multiple punishments is the "offense" of conviction, instead of the conduct underlying or related to that offense. Id.

-12-

1980) (en banc), aff'd sub nom. Albernaz v. United States, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); see Blockburger, 284 U.S. at 301-03, 52 S.Ct. at 181-82.   To determine whether a previous conspiracy conviction (the Kansas conspiracy conviction) involved the "same offense" as a subsequently charged conspiracy (the Texas conspiracy charge) we examine the following factors:

> (1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place.

Marable, 578 F.2d at 154; see United States v. Ellender, 947 F.2d 748 (5th Cir. 1991). The Kansas conspiracy occurred over a time period, 1984 to 1990, that included the time period that the Texas conspiracy is alleged to have involved, 1984 to 1986.  Both the Kansas conspiracy and the Texas conspiracy took place at Peoples Heritage's Kansas and Texas facilities.  Both the Kansas indictment and the Texas indictment charged the statutory offenses of committing bank fraud, 18 U.S.C. § 1344; and making false statements, 18 U.S.C. § 1001.  Thus, there are some similarities between the Kansas conspiracy and the Texas conspiracy.

The Texas indictment, however, further charged the offenses of unlawful receipt, 18 U.S.C. § 215; misapplication, 18 U.S.C. § 657; and wire fraud, 18 U.S.C. § 1343--all unalleged in the Kansas indictment.  More importantly, there is no overlap in the overt acts set out in the Kansas indictment and those enumerated in the

Texas indictment. Finally, while the Kansas indictment did not name McClain as a coconspirator of Cruce and Burger, the Texas indictment charges that McClain was the coconspirator of Cruce and Burger in all three of the illegal transactions alleged. Consequently, it is clear to us that the Kansas conspiracy constitutes a separate and distinct offense from the conspiracy offense charged in the Texas indictment.[9] Because the conspiracy offenses are separate, we presume that Congress intended separate punishments for each. See Hunter, 459 U.S. at 367, 103 S.Ct. at 678-79. Only a clear indication of contrary congressional intent can overcome this presumption. See Albernaz, 450 U.S. at 340, 101 S.Ct. at 1143.

**D**

**The Sentencing Guidelines Evince No Contrary Congressional Intent**

---

[9]In their briefs, Cruce and Burger argued that the "same conduct" test of Grady, 495 U.S. at 510, 110 S.Ct. at 2087, barred the Texas indictment as a second prosecution for the same offense. After Cruce and Burger submitted their briefs, however, the Supreme Court--in Dixon, ___ U.S. at ___, 113 S.Ct. at 2860-- overruled its short-lived "same conduct" test thus reestablishing pre-Grady law. Under the retroactivity rule of Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987), Dixon controls this appeal. We note, however, that even if Grady's now-defunct "same conduct" test was applicable, we would still hold that the Kansas conspiracy prosecution would not preclude the Texas indictment because the conduct charged in Kansas did not involve the three transactions with McClain charged in the Texas indictment. This holding would be consistent with our unpublished decision involving one of Cruce and Burger's coconspirators in the Kansas indictments, who was subsequently indicted in Texas for bank-fraud charges arising out of transactions with McClain. United States v. Grosz, No. 92- 1451 (5th Cir. Oct. 8, 1992).

We now turn to address specially whether, by adopting the Sentencing Guidelines, Congress clearly intended for the consideration of relevant conduct to preclude future prosecutions and punishments of separate offenses encompassing that same conduct. Unlike the <u>Koonce</u> and <u>McCormick</u> Courts, we are not convinced that Congress intended to mandate the radical change of precluding all future punishment of offenses that encompass conduct that was previously used to enhance the sentence for a separate offense--effectively imposing the requirement of mandatory joinder of offenses in a single trial.[10] Instead, we are persuaded that Congress intended to continue the traditional judicial practice of considering aggravating and mitigating circumstances in determining an appropriate sentence for the conviction offense. <u>See</u> <u>Williams v. New York</u>, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949). Our conclusion is buttressed by the statement of the

---

[10]We cannot overlook the point that Federal Rule of Criminal Procedure 8(a) continues to allow the permissive joinder of criminal offenses. In a related matter, the Supreme Court recently noted:

> The collateral-estoppel effect attributed to the Double Jeopardy Clause . . . may bar a later prosecution for a separate offense where the Government has lost an earlier prosecution involving the same facts. <u>But this does not establish that the Government "must . . . bring its prosecutions . . . together." It is entirely free to bring them separately, and can win convictions in both</u>.

<u>Dixon</u>, ___ U.S. at ___, 113 S.Ct. at 2860 (emphasis added). If the government can attain separate convictions for separate offenses involving the "same facts," courts most assuredly can impose punishments for those offenses.

Chairman and the General Counsel of the Sentencing Commission that the relevant conduct portion of the guidelines "simply formalizes the pre-guidelines practice of considering the full range of a defendant's conduct for sentencing purposes, regardless of whether all of such criminal activity was encompassed within counts of conviction."  William W. Wilkins, Jr. & John R. Steer, Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines, 41 S.C. L. Rev. 495, 516 (1990). Other courts of appeal have echoed this interpretation.  See, e.g., United States v. Wright, 873 F.2d 437, 441 (1st Cir. 1989); United States v. Scroggins, 880 F.2d 1204, 1211-12 (11th Cir. 1989), cert. denied, 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990).

Furthermore, Congress and the Sentencing Commission have manifested the express recognition that the guidelines do not preclude future criminal proceedings, including the consequent punishments, for criminal conduct that was used to enhance an earlier sentence.  In this connection, U.S.S.G. § 5G1.3(b) provides for the imposition of concurrent or consecutive--albeit abridged-- sentences when the defendant is currently serving a term of imprisonment for a separate offense that encompassed the same conduct as the instant offense.[11]  Thus, when Congress spoke to the

_____

[11]The commentary of the current amended version of U.S.S.G. § 5G1.3(b) provides:

> [The situation requiring concurrent sentences] can occur, for example, where a defendant is prosecuted in both federal and state court, or in two or more federal

subject of two prosecutions and punishments for the same conduct, it chose only to limit punishments in the second proceeding--not to preclude that proceeding and the consequent punishment altogether.[12] Because Congress did not clearly preclude punishment of offenses that encompass previously considered conduct, we should not and will not.

Accordingly, in the instant case, we hold that the Blockburger presumption that separate punishments are allowed for separate

---

jurisdictions, for the same criminal conduct or for different criminal transactions that were part of the same course of conduct.

U.S.S.G. § 5G1.3(b) commentary n.2 (Nov. 1993) (emphasis added). See 28 U.S.C. § 994(p) (1988) (providing that the Sentencing Commission must submit amendments to the guidelines to Congress and that Congress may disapprove any such amendment); William W. Wilkins, Jr. & John R. Steer, The Role of Sentencing Guideline Amendments in Reducing Unwarranted Sentencing Disparity, 50 WASH. & LEE L. REV. 63, 64-69 (1993) (discussing the congressionally envisioned role of the Sentencing Commission in refining the guidelines via amendment). Consequently, it is clear that Congress and the Sentencing Commission anticipated the imposition of punishment--whether concurrent or consecutive--in a second proceeding and, thus, did not intend to preclude such proceeding. See Ball v. United States, 470 U.S. 856, 864-65, 105 S.Ct. 1668, 1673-74, 84 L.Ed.2d 740 (1985) (holding that even a concurrent sentence constitutes punishment).

[12]In addition to U.S.S.G. § 5G1.3's failure to preclude further proceedings involving previously considered conduct, neither the grouping guidelines, §§ 3D1.1 -.5, nor the fraud guideline, § 2F1.1, do so. Instead, these guidelines deal with multiple punishments or count manipulation within the same proceeding, or simply reduce sentencing disparity between similar crimes, without even addressing future proceedings. See U.S.S.G. Ch. 1, Pt. A.4(a) (Nov. 1993); id. (Nov. 1990) (same); Ch. 3, Pt. D introductory commentary (Nov. 1993); id. (Nov. 1990) (same); U.S.S.G. § 3D1.1(a)(1) (Nov. 1993); id. (Nov. 1990) (same); U.S.S.G. Ch. 1, Pt. A.3 (Nov. 1993); id. (Nov. 1990) (same).

offenses--the Kansas conspiracy and the Texas conspiracy--has not been overcome by a "clear indication of contrary legislative intent." <u>See</u> <u>Hunter</u>, 459 U.S. at 367, 103 S.Ct. at 679 (quoting <u>Albernaz</u>, 450 U.S. at 340, 101 S.Ct. at 1143).

## VI

For the foregoing reasons, the order of the district court denying the defendants' motion to dismiss the Texas indictment is AFFIRMED, and the case is REMANDED for trial.

A F F I R M E D  and  R E M A N D E D.