United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 8, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-50029
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

Gordon Dunn,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:03-CR-10-1

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

In August 2003, pursuant to a plea agreement, Gordon Dunn pleaded guilty in the Western District of Texas to conspiracy to pass, utter, and possess fictitious obligations[1] and to aiding and abetting in bank fraud ("Texas conviction").[2] He received a sentence of 60 months of imprisonment for conspiracy and 125 months of imprisonment for bank fraud, followed by three and five years of

---

[*] Pursuant to the 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 18 U.S.C. §§ 371 & 514(a)(2) (carrying a five-year statutory maximum sentence).

[2] 18 U.S.C. §§ 2 & 1344 (carrying a 30-year statutory maximum sentence).

supervised release, respectively.[3] The district court also imposed a $200 assessment and ordered Dunn to pay $387,406.87 in restitution.

On appeal, Dunn attacks both his conviction and his sentence. He contends that the district court erred in failing to dismiss the conspiracy charge because the prosecution violated double jeopardy and due process.[4] He, then, asserts that the district court erred in denying him credit for time served, in failing to articulate its consideration of the sentencing factors enumerated in 18 U.S.C. § 3553(a), in failing to comport with *United States v. Booker*,[5] and in relying on unproved prior convictions to calculate his sentence.

Dunn first argues that we must dismiss his conspiracy conviction because he pleaded guilty to the same crime in Arkansas[6]—the Texas conviction, thus, repugnant to the principles of double jeopardy and due process. We review *de novo*.[7] In order to establish double jeopardy, the defendant bears the initial

---

[3] The district court sentenced Dunn to the upper limit recommended by the Sentencing Guidelines.

[4] Dunn pursues his claim of a Fifth Amendment violation despite pleading guilty to the conspiracy charge in the Texas indictment after the magistrate judge aborted a rearrangement hearing because Dunn had not fully explored the double jeopardy issue with his counsel.

[5] 543 U.S. 220 (2005).

[6] Dunn pleaded guilty to conspiracy to defraud through fictitious instructions in the Western District of Arkansas; he served a 35-month term of imprisonment and was released in May 2002.

[7] *United Stated v. Gonzales*, 40 F.3d 735, 737 (5th Cir. 1994); *United States v. Delgado*, 256 F.3d 264, 270 (5th Cir. 2001).

burden of demonstrating a *prima facie* claim.[8]  Once satisfied, the burden shifts to the government to show by a preponderance of the evidence that double jeopardy principles do not bar the later criminal proceeding.[9]  As the critical issue concerning double jeopardy in the instant matter, the government must prove that separate agreements formed the basis of each conspiracy conviction.[10]  In evaluating whether one or more agreements existed, we consider, as to each charged conspiracy: (1) the time span, (2) the persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the illicit activity, and (5) the places where the related events transpired.[11]

The Arkansas indictment charged that the prior conspiracy spanned from May 18, 1999 through October 21, 1999, whereas the Texas indictment alleged that the conspiracy began in June 1997 and ended July 29, 2000.  While the statutory offenses are identical,

---

[8]  *Untied States v. Cruce*, 21 F.3d 70, 74 (5th Cir. 1994).

[9]  *Id.*

[10]  *United States v. Deshaw*, 974 F.2d 667, 673 (5th Cir. 1992).

[11]  *United States v. Marable*, 578 F.2d 151, 154 (5th Cir. 1978), *overruled by United States v. Rodriguez*, 612 F.2d 906, 919 (5th Cir. 1980), *as stated in United States v. Fisher*, 106 F.3d 622, 633 n.11 (5th Cir. 1997); *United States v. Delgado*, 256 F.3d 264, 272 n.5 (5th Cir. 2001) (stating "[a]lthough a panel of this Court questioned the vitality of the evidence-based standard for measuring double jeopardy claims in *Fisher*, the five-factor test for determining whether separate conspiracies were involved remains a viable part of the analysis with respect to double jeopardy claims involving conspiracies" (internal citations omitted)).

the conspiracies, as alleged in the indictments, involve different persons;[12] Dunn remains the only commonality.[13] The conspiracies do not share common overt acts or other similar facts, as both the banks and the checks used in each scheme differed, for example. Lastly, the events revealed in the Arkansas indictment are geographically limited to Arkansas, whereas, the Texas indictment includes acts which occurred in Texas, Arkansas, Louisiana, Missouri, and Florida—only one of the 32 overt acts charged in the Texas indictment occurring in Arkansas.[14] Tellingly, according to the testimony of an investigating agent, Dunn stated that he "hated" the two men named as co-conspirators in the Texas indictment and admitted that he "went to Arkansas and started his own separate scheme," "to go on his own to work with other people." The government has established by a preponderance of the evidence that the conspiracies involved separate agreements. Thus, the prosecution for conspiracy in the Western District of Texas does not violate the principles of double jeopardy. Although Dunn

---

[12] *But see United States v. Kalish*, 690 F.2d 1144, 1151 (5th Cir. 1982) (stating "[t]he commission of crimes at different times does not necessarily prove that the crimes were carried out by different conspiracies" and "that the conspiracy must take on additional members to accomplish one of its objects does not in itself establish a different conspiracy").

[13] Dunn's assertion that the "other persons known and unknown" recited in the Texas indictment include the two co-conspirators named with Dunn in the Arkansas indictment is speculative and unavailing.

[14] Dunn makes much of the fact that one of the overt acts alleged in the Texas indictment occurred in Arkansas on the same day as the final overt act alleged in the Arkansas indictment. However, this fact does not preclude a finding that Dunn was involved in two distinct criminal enterprises at the time.

4

argues the due process claim separately, this argument rests and falls on the same logical framework; the two convictions involved separate conspiracies and are factually distinct. Consequently, Dunn's due process argument that facts pertinent to the Arkansas conviction were impermissibly relitigated also lacks merit.

Dunn's plea agreement contained a waiver provision in which he forfeited his statutory right to appeal the sentence, except in the event of an upward departure from the Sentencing Guidelines. The government, therefore, urges that we dismiss Dunn's assertions of error because he knowingly and voluntarily waived the right to appeal his sentence and since the challenge does not fall within the reserved exception.[15]

A defendant may waive his statutory right to appeal as a condition of a valid plea agreement, if the waiver is both knowing and voluntary and applies to the instant circumstances.[16] Since the district court did not upwardly depart from the Guidelines, Dunn's knowing and voluntary acceptance of the plea agreement, which contained the explicit and unambiguous appeal-waiver provision—reinforced by the magistrate judge's admonitions during

---

[15] In his reply brief, Dunn argues for the first time that the government waived its right to rely on the appeal-waiver provision contained in the plea agreement, for failure to raise the objection below. We decline to address the merits of this argument. *See United States v. Bonilla-Mungia*, 422 F.3d 316, 319 (5th Cir. 2005).

[16] *United States v. Melancon*, 972 F.2d 566, 567 (5th Cir. 1992); *United States v. Bond*, 414 F.3d 542, 544-46 (5th Cir. 2005) (declining to reach an assertion of error based on *Booker*, in light of a waiver-of-appeal provision in the plea agreement); *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005).

5

the arraignment hearings—bars his assertions of sentencing error.[17]

We AFFIRM the judgment of conviction and DISMISS the sentencing objections.

AFFIRMED in part; DISMISSED in part.

---

[17] Dunn also argues that he did not waive the right to appeal a sentence above the statutory maximum, as defined in *Blakely v. Washington*. 124 S.Ct. 2531, 2537 (The "statutory maximum...is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."). However, we have held that "the exception for a sentence imposed above the statutory maximum shall be afforded its natural and ordinary meaning of the upper limit of punishment that Congress has legislatively specified for violations of a statute." *United States v. Cortez*, 413 F.3d 502, 503 (5th Cir. 2005) (per curiam) ("The language in the appellate waiver must be afforded its plain meaning in accord with the intent of the parties at the time the plea agreement was executed. There is no indication that the parties intended that the exception in the appellate waiver for 'a sentence exceeding the statutory maximum punishment' would have a meaning other than its ordinary and natural meaning" (internal citations and quotations omitted).). Dunn's sentence does not exceed the statutory maximum.