UNITED STATES of America, Appellee,

v.

Fernando CACEDA, Defendant,

**Pablo Rojas–Holguin, Defendant–Appellant.**

**No. 588, Docket 92–1328.**

United States Court of Appeals, Second Circuit.

Argued Dec. 2, 1992.

Decided April 5, 1993.

**708**

Martin L. Schmukler, New York City, (Domenick J. Porco, New York City, of counsel), for defendant-appellant.

Peter A. Norling, Asst. U.S. Atty. for the E.D. of N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty. for the E.D. of N.Y., Susan Corkery, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for Appellee.

Before: OAKES and WINTER, Circuit Judges, and PRESKA, District Judge.*

WINTER, Circuit Judge:

Pablo Rojas–Holguin pled guilty to conspiring to possess and distribute cocaine

and was sentenced on May 21, 1992. He appeals from the sentence imposed by Judge Dearie. We affirm.

Federal agents arrested Rojas–Holguin after he sold thirty-seven kilograms of 92 percent pure cocaine to an undercover agent. During the course of related searches, agents discovered a ledger in which Rojas–Holguin had detailed transactions involving 3166 kilograms of cocaine during a two-month period, as well as workers' salaries and expense information reflecting the activities of "stash houses." The ledger entries included various coded references, including cocaine coded "2H," the reference on the package of cocaine sold to the agent. While the federal prosecution was in progress, New York state authorities arrested Rojas–Holguin for selling 100 kilograms of cocaine. At the time of his federal sentencing, the state proceeding was pending.

Rojas–Holguin pled guilty to a count that related only to the 37 kilograms sold to the undercover agent. The presentence report took into account the 3166 kilograms of cocaine reflected in the ledger and calculated his base offense level at 42. It also recommended an upward adjustment of 4 based on his organizational role, *see* U.S.S.G. § 3B1.1(a) (1991), and a downward adjustment of 2 for his acceptance of responsibility, *see* U.S.S.G. § 3E1.1, resulting in a total of 44. This was one level above the maximum offense level of 43 set out in the Sentencing Table in Chapter Five of the Sentencing Guidelines.

Rojas–Holguin objected to the report's calculation of the quantity of narcotics involved, and Judge Dearie conducted a hearing to determine the proper quantity to be considered. At this hearing, Rojas–Holguin's attorney conceded that the uncharged conduct "would appear" to fall within the definition of relevant conduct and that the majority of the ledger entries were in Rojas–Holguin's handwriting. Drug Enforcement Agency Special Agent Jerome McArdle testified that the ledger

---

* The Hon. Loretta A. Preska, U.S. District Judge for the Southern District of New York, sitting by designation.

included references to "Pablo," an alias for Rojas–Holguin. At the close of the hearing, Judge Dearie found that the uncharged conduct should be considered as part of the same conduct as the offense to which Rojas–Holguin pled guilty. He explained that "[i]t would defy common sense ... to put the sort of blinders on [about the larger quantity of drugs involved]." Judge Dearie held that any possible double-punishment concerns must be raised only at the time of sentencing in state court, if that prosecution continued and was successful. Judge Dearie then found Rojas–Holguin to be a manager, *see* U.S.S.G. § 3B1.1(b), rather than an organizer. *See* U.S.S.G. § 3B1.1(a). He therefore adjusted Rojas–Holguin's base offense level of 42 upward by 3 to 45 for that managerial role and downward by 2 for acceptance of responsibility. Arriving at an offense level of 43, Judge Dearie sentenced Rojas–Holguin to 40 years in prison.

■ Rojas–Holguin argues first that Judge Dearie erred in considering the 3166 kilograms of cocaine in addition to the 37 kilograms sold to the agent. However, Guidelines' Section 1B1.3(a)(2) states that the offense level shall be computed on the basis of "all ... acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." Judge Dearie found that the transactions reflected in the ledger were "part of the same course of conduct or common scheme or plan" as the sale to the agent. This finding is fully supported by the record. The ledger was kept by Rojas–Holguin, detailed his participation in drug activity, and included code references identical to the code on the cocaine sold to the undercover officer for which Rojas–Holguin had pled guilty. Contrary to Rojas–Holguin's argument, Judge Dearie was required to consider the uncharged quantities. *See United States v. Schaper,* 903 F.2d 891, 897 (2d Cir.1990).

■ Rojas–Holguin's second contention is that the additional quantities should not have been considered because of the pending state proceeding, which, by the reasoning used with regard to taking the 3166 kilograms into account, might be part of the same course of conduct. However, in *United States v. Perdomo,* 927 F.2d 111 (2d Cir.1991), we concluded that a sentencing court should not consider the outcome of possible subsequent prosecutions. "Resolution of [the double-punishment] issue ... must properly await the second prosecution, if any." *Id.* at 116. Essentially, "the issue is not ripe for review." *United States v. Koonce,* 885 F.2d 720, 722 (10th Cir.1989), *cert. denied,* —— U.S. ——, 112 S.Ct. 1695, 118 L.Ed.2d 406 and *cert. denied,* —— U.S. ——, 112 S.Ct. 1705, 118 L.Ed.2d 413 (1992). In addition, under certain limited circumstances, the Guidelines treat conduct that has been the subject of a state prosecution that has resulted in a conviction and sentence as relevant conduct. *See* U.S.S.G. § 1B1.3 Application Note 7. Thus, consideration of quantities that are only potentially the subject of a state prosecution follows *a fortiori.*

■ Third, Rojas–Holguin argues that Judge Dearie should have exercised his discretion to make a downward departure. However, refusals of sentencing courts "to depart from the applicable Guidelines range [are] not appealable," *United States v. Colon,* 884 F.2d 1550, 1552 (2d Cir.), *cert. denied,* 493 U.S. 998, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989), unless the sentencing court mistakenly believed that it lacked the authority to depart. *See United States v. Sharpsteen,* 913 F.2d 59, 62–64 (2d Cir. 1990). Judge Dearie rejected possible downward departures only on prudential grounds, not on any supposed lack of authority.

■ Fourth, Rojas–Holguin contends that the court erred in adding an upward adjustment of 3 levels because that adjustment brought the level to 45, 2 levels above the highest offense level on the table, rendering his 2–level downward adjustment valueless. There appear to be no reported decisions on whether the calculation of upward adjustments must stop at level 43, while subsequent downward adjustments proceed from that point. The Guidelines are not helpful in resolving the issue. Application Note Two of the Commentary to

the Sentencing Table states that "[a]n offense level of more than 43 is to be treated as an offense level of 43." However, that does not answer the question of how one arrives at the final offense level. We believe it evident that downward adjustments must be made from the total of the base offense level plus upward adjustments even if that total exceeds 43. Otherwise, a more culpable offender, say, a defendant whose conduct would yield a level of 50 who was entitled to a downward adjustment of 2, would receive a total offense level of 41, while a less culpable defendant with a level of 43 and no applicable upward or downward adjustments would get a higher sentence. We decline to read the Guidelines to compel that perverse result.

Fifth, Rojas–Holguin argues that Judge Dearie relied on the quantity of drugs involved to calculate the base offense level and to conclude that the upward adjustment was warranted for Rojas–Holguin's role as a manager of the conspiracy. This dual reliance, he asserts, was impermissible "double-counting." However, we need not address whether the Guidelines permit the consideration of the quantity of drugs for the two different Guidelines calculations because there was no double-counting in this case. Judge Dearie did use the quantity of known or foreseeable drugs in the conspiracy to calculate Rojas–Holguin's base offense level. The upward adjustment for being a manager, on the other hand, was based on the fact that Rojas–Holguin maintained the ledger for "a higher authority." *Cf. Perdomo*, 927 F.2d at 116–17 (holding that defendant's role in the relevant conduct was includable in his sentencing determination).

▌ Sixth, at oral argument Rojas–Holguin argued that his offense level should have been adjusted further downward because Guidelines' Section 3E1.1 was recently amended. As of November 1992, a Section 3E1.1 adjustment reduces offense levels by 3 points, rather than the 2–level adjustment in effect when Rojas–Holguin was sentenced. In essence, Rojas–Holguin is requesting the retroactive application of the 1992 amendment to Section 3E1.1.

However, according to 18 U.S.C. § 3582(c)(2), the "court may not modify a term of imprisonment once it has been imposed" unless "such a reduction is consistent with applicable policy statements" issued by the Sentencing Commission. 18 U.S.C. § 3582(c); *see also* 28 U.S.C. § 994(u)(2); *Braxton v. United States*, —— U.S. ——, ——, 111 S.Ct. 1854, 1858, 114 L.Ed.2d 385 (1991). In *United States v. Colon*, 961 F.2d 41, 46 (2d Cir.1992), we held that, "[w]hatever the scope of § 3582(c)(2), it adequately indicates that Congress did not wish appellate courts on direct review to revise a sentence in light of changes made by the [Sentencing] Commission after the sentence has been imposed." *Colon's* holding was based on the Guidelines' policy statement articulating a general rule that *"a reduction* in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) is not consistent with this policy statement." U.S.S.G. § 1B1.10(a) (emphasis added). Only certain enumerated amendments are specified by the Guidelines as exceptions to the general rule that amendments are not to be applied retroactively even though appellate review has not been concluded. *See* U.S.S.G. § 1B1.10(d) (1992) (referring to amendments listed in Appendix C that are retroactively applied). Section 1B1.10(d) does not include the 1992 amendment to Section 3E1.1 in its list of retroactive amendments. As in *Colon*, the pertinent amendment "is not among those explicitly stated to be retroactive by the Sentencing Commission," and should not be applied retroactively. 961 F.2d at 46.

We therefore affirm.