United States Court of Appeals,

Eleventh Circuit.

Nos. 93-2574, 93-2575, 93-2576, 93-2627 and 93-2957.

UNITED STATES of America, Plaintiff-Appellee,

v.

Barry HOUSER, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Wayne BENNETT, a/k/a/ "Pimp Wayne," Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Dominic LIGHTBOURNE, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Ricky HOUSER, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Cameron HOPE, a/k/a Ron Owens, Ron Davis, Ron Bennett, Defendant-Appellant.

Nov. 30, 1995.

Appeals from the United States District Court for the Middle District of Florida. (No. 92-104 Cr-Orl-19), Patricia C. Fawsett, Judge.

Before HATCHETT, DUBINA and BLACK, Circuit Judges.

DUBINA, Circuit Judge:

Appellants-defendants ("the defendants") appeal their guilty pleas and sentences imposed on them by the United States District Court for the Middle District of Florida. For the reasons that follow, we affirm the defendants' convictions and sentences.

I. *STATEMENT OF THE CASE*

A. *Background Facts*

This case results from an 18-month investigation by agents from the Bureau of Alcohol, Tobacco and Firearms ("ATF"), the Florida Department of Law Enforcement, and the local police department, known as "Operation Cookie Monster."

Beginning in or about January of 1989, defendant Wayne Bennett ("Bennett") was involved in a cocaine-trafficking organization in Orlando, Florida, which was supplied by Ziaddin Gonzalez, a/k/a "Ziggy," of Miami, Florida. The cocaine was supplied in powder form to the Orlando distributors, who would then cook the cocaine into cocaine base ("crack") for resale. Bennett, one of the Orlando distributors, employed five or more persons who distributed cocaine base or assisted him with other drug-trafficking activities, and purchased and sold well in excess of 15 kilograms of cocaine base.

In June 1990, Joe Matthews ("Matthews") agreed to buy two ounces of crack cocaine from Bennett. Upon receipt of the crack, however, Matthews left without paying for it. Bennett shot Matthews in the leg. Although Matthews initially reported the incident to the police, he recanted his statement after Bennett threatened him and paid him $3,000.00.

In October of 1990, Bennett, defendant Cameron Hope ("Hope"), and Kirk Whittaker ("Whittaker") travelled to Miami with two female companions to purchase 2.25 kilograms of cocaine. When they returned to Orlando, the two women stole the cocaine and fled to their home. Bennett and Hope followed the women to the residence

where Hope accosted one of the women by pointing a semi-automatic handgun at her and demanding the return of the cocaine.

Bennett purchased a 1987 Mercedes Benz automobile from defendant Dominic Lightbourne ("Lightbourne") for $20,000.00 cash in February of 1991.  Both individuals knew that the automobile was purchased with drug proceeds.

Defendants Barry Houser ("Barry") and Ricky Houser ("Ricky") sold crack cocaine on the street for Hope and Bennett.  They specifically targeted an apartment complex called Lake Mann.  During the fall of 1990, Barry possessed a firearm during the drug sales to protect himself, Ricky, the money, and the cocaine.

B. *Procedural History*

The defendants were indicted, along with many other individuals, by a federal grand jury for various drug offenses.  Some of the defendants were also indicted for weapons violations.  Defendants pled guilty to conspiracy and other related charges and were sentenced accordingly.  The district judge had 13 defendants, five of whom are defendants in this case, appear before her, at which time she conducted a Fed.R.Crim.P. 11 plea colloquy.  After making a finding that the pleas were knowingly and voluntarily made and that the pleas were free of coercion, the district judge accepted each defendant's guilty plea.

## II. *ISSUES*

1. Barry and Ricky challenge the district court's acceptance of their guilty pleas regarding the possession of the firearm.

2. Ricky argues that his guilty plea was not entered knowingly and intelligently and that the district court did not adequately

apprise him of his sentence appeal waiver.

3. Barry contends that the district court erred in failing to grant him a two-level reduction for his minimal participation in the conspiracy.

4. Hope, Bennett, and Lightbourne contend that the district court erred in exceeding level 43 in computing their sentences.

### III. *STANDARD OF REVIEW*

A. *Guilty plea*

The district court's implicit factual finding that the requirement of Rule 11 was satisfied when it accepted the defendants' guilty pleas is subject to the clearly erroneous standard of review. *United States v. Lopez,* 907 F.2d 1096, 1099 (11th Cir.1990). In determining whether there was a sufficient factual basis for a guilty plea, this court must consider whether the district judge was subjectively satisfied with the basis for the plea. The district court's decision to accept a guilty plea will not be overturned unless there has been an abuse of discretion. *United States v. Owen,* 858 F.2d 1514, 1516 (11th Cir.1988).

B. *Reduction in Sentence*

A district court's determination under the sentencing guidelines of a defendant's role in the offense is a finding of fact to which the clearly erroneous test applies. *United States v. Castillo-Valencia,* 917 F.2d 494, 501 (11th Cir.1990), *cert. denied,* 499 U.S. 925, 111 S.Ct. 1321, 113 L.Ed.2d 253 (1991).

C. *Exceeding Level 43*

The district court's interpretation of the sentencing

guidelines is subject to *de novo* review on appeal. *United States v. Pompey,* 17 F.3d 351, 353 (11th Cir.1994). Whether a particular guideline applies to a given set of facts is a question of law subject to *de novo* review. *United States v. Dukovich,* 11 F.3d 140, 141 (11th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 2112, 128 L.Ed.2d 671 (1994).

## IV. *ANALYSIS*

Because our review of the record persuades us that there is no merit to any of the arguments made in support of the first three issues presented on appeal, we affirm the district court's disposition of those issues without discussion.[1] We do feel compelled, however, to address the sentencing issue presented by defendants Hope, Bennett, and Lightbourne, since it is one of first impression in this circuit. Specifically, Hope, Bennett, and Lightbourne contend that the district court erred when it refused to cap their total offense level at 43 before applying downward adjustments. Appellants offer policy as well as legal arguments in support of their respective positions. We will examine each defendant's sentence in turn.

A. *Bennett*

The probation officer grouped counts 1, 3, and 4 and 11-13 together and fixed Bennett's preadjustment base offense level at 42. The probation officer then applied a four-level enhancement for Bennett's leadership role, raising his adjusted offense level to 46. Bennett's adjusted offense level for count 36 was set at 22. Because Bennett did not receive a unit increase in his

---

[1]*See* 11th Cir.R. 36-1.

adjusted base offense level for multiple counts under § 3D1.4 of the sentencing guidelines, his combined adjusted offense level remained at 46. The probation officer then applied a three-level downward adjustment for acceptance of responsibility, which reduced Bennett's total offense level to 43. At sentencing, Bennett objected to this computation of his offense level, arguing that it should have been capped at 43 before applying the reduction for acceptance of responsibility. After rejecting Bennett's argument, the district court granted the government's § 5K1.1 motion and reduced Bennett's offense level by four to level 39.

B. *Lightbourne*

The probation officer grouped counts 1, 2, and 10 together and fixed Lightbourne's preadjustment base offense level at 42. The probation officer then applied a four-level enhancement for Lightbourne's leadership role, raising his adjusted offense level to 46. Lightbourne's adjusted offense level for count 29 was set at 23. Because Lightbourne did not receive a unit increase in his adjusted offense level for multiple counts under § 3D1.4 of the sentencing guidelines, his combined adjusted offense level remained at 46. The probation officer then applied a three-level reduction for acceptance of responsibility, which reduced Lightbourne's total offense level to 43. At sentencing, Lightbourne objected to the calculation of his offense level above 43, arguing that his offense level should not have exceeded level 43 before applying the reduction for acceptance of responsibility. After overruling the objection, the district court granted the government's § 5K1.1 motion and reduced Lightbourne's offense level by four to level 39.

C. *Hope*

The probation officer grouped counts 1 and 3 together and fixed Hope's preadjustment base offense level at 42.  The probation officer then applied a four-level enhancement for Hope's leadership role, raising his adjusted offense level to 46.  Hope's adjusted offense level for count 21 was set at 28.  Because Hope did not receive a unit increase in his adjusted base offense level for multiple counts under § 3D1.4 of the sentencing guidelines, his combined adjusted offense level remained at 46.  The probation officer then applied a three-level downward adjustment for acceptance of responsibility, which reduced Hope's total offense level to 43.  At sentencing, Hope objected to this computation of his offense level, arguing that his offense level should have been capped at 43 before applying the reduction for acceptance of responsibility and downward departure under § 5K1.1.  After overruling Hope's objection, the district court granted the government's § 5K1.1 motion and reduced Hope's offense level by five to level 38.

In this appeal, Bennett, Lightbourne, and Hope contend that the sentencing guidelines table caps at level 43 and that an offense level higher than 43 is to be treated as a level 43.  Thus, they argue that the reduction for acceptance of responsibility should be determined from level 43, rather than level 46, their actual adjusted level. Finally, the defendants contend that, based on the public policy considerations underlying § 3E1.1 of the sentencing guidelines, applying a reduction for acceptance of responsibility to offense levels calculated above 43 renders the

downward adjustment valueless and discourages defendants from pleading guilty.

The government counters that based on the application instructions for the sentencing guidelines, the district court correctly refused to cap the defendants' offense levels at 43 before reducing the offense levels for acceptance of responsibility. The government contends that only after the adjustment for acceptance of responsibility is applied, do the guidelines suggest capping the offense level at 43. Moreover, the government argues that the guidelines in fact negate, not support, the defendants' contentions.

The only circuit to specifically address this issue is the Second Circuit in *United States v. Caceda,* 990 F.2d 707 (2d Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 312, 126 L.Ed.2d 259 (1993). In *Caceda,* the defendant argued that the district court erred in applying an upward adjustment for the defendant's role in the offense, because it brought the offense level to 45, two levels above the highest offense, rendering the defendant's two-level reduction for acceptance of responsibility valueless. *Id.* at 709. The Second Circuit rejected the defendant's argument, reasoning that to do otherwise would lead to perverse results. *Id.* at 710. For example, a more culpable defendant—with an offense level of 50 and entitled to a reduction for acceptance of responsibility—would receive an offense level of 41, and a less culpable defendant—with an offense level of 43 and entitled to no adjustments—would get a higher sentence. *Id.*

The sentencing guidelines are themselves instructive in

resolving the issue. As the government points out in its brief, the sentencing guidelines provide applicable instructions for determining an appropriate sentence. *See* U.S.S.G. § 1B1.1 (1993).

> The instructions require the sentencing court to: (a) determine the applicable offense guideline section from Chapter Two; (b) determine the base offense level and apply any appropriate specific offense characteristics contained in the particular guideline in Chapter Two; (c) apply the adjustments as appropriate related to victim, role, and obstruction of justice from Parts A, B, and C of Chapter Three; (d) repeat steps (a) through (c) for each count and adjust the offense level accordingly if there are multiple counts of conviction; (e) *apply the adjustment as appropriate for the defendant's acceptance of responsibility from Part E of Chapter Three;* (f) determine the defendant's criminal history category as specified in Part A of Chapter Four; (g) determine the guideline range in Part A of Chapter Five that corresponds to the offense level and criminal history category previously determined; (h) determine from Part B through G of Chapter Five the sentencing requirements and options related to imprisonment, fines, and restitution; and (i) determine provisions from Parts H and K of Chapter Five and any other policy statements or commentary in the guidelines that might warrant consideration in imposing sentence.

*See* U.S.S.G. § 1B1.1(a)-(i). At step (g)—after upward and downward adjustments have been made to the offense level and the district court determines the applicable guideline range using the sentencing table—the commentary to Chapter Five suggests that "[a]n offense level of more than 43 is to be treated as an offense level of 43." U.S.S.G. Ch. 5, Pt. A, comment. (n. 2).

In the present case, the district court followed the sequential instructions and determined each defendants' adjusted combined offense level by selecting the applicable guideline provision, applying the specific offense provisions and the adjustments for their respective roles in the offense, and by adjusting the offense level for multiple counts. The district court then reduced the combined offense level for acceptance of

responsibility.     After   the   district   court   arrived   at   the defendants' total offense levels, it determined their criminal history categories and the applicable guideline ranges.   Finally, the district court granted the § 5K1.1 motions and sentenced the defendants accordingly.

Based upon the sequential instructions contained in § 1B1.1, the district court correctly calculated the offense levels and subsequently reduced them by several levels for acceptance of responsibility.   In our view, to do otherwise would be inconsistent with the instructions contained in the guidelines.   Seeing no error, we affirm the defendants' convictions and sentences.

AFFIRMED.