[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12451
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cr-20904-UU-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIEL A. RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 25, 2021)

Before JORDAN, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Daniel Rodriguez ("Rodriguez") appeals his conviction and his 400-month sentence for conspiracy to possess with intent to distribute a controlled substance and controlled substance analogues, in violation of 21 U.S.C. § 846, conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), possession with intent to distribute a controlled substance analogue, in violation of 21 U.S.C. §§ 802(32)(A), 841(a)(1), 841(b)(1)(C), and 813, possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2, and money laundering, in violation of 18 U.S.C. § 1957. Rodriguez raises eleven issues on appeal, which we will address in turn.

I.

Rodriguez argues that the district court erred when it accepted his guilty plea because there was an insufficient factual basis for his plea. Specifically, he argues that the proffer merely mirrored the indictment and did not contain the essential elements of the charges against Rodriguez.

Normally, we review a district's court's decision to accept a guilty plea for abuse of discretion and review for clear error the district court's factual findings that the requirements of Federal Rule of Criminal Procedure 11 were satisfied. *United States v. Houser*, 70 F.3d 87, 89 (11th Cir. 1995). Under Rule 11(b), the district court "must determine that there is a factual basis for the plea" before entering a judgment of guilt. Fed. R. Crim. P. 11(b)(3). The standard for evaluating a challenge

to the factual basis for a guilty plea is simply whether the trial court was presented with evidence such that "a court could reasonably find that the defendant was guilty." *United States v. Rodriguez*, 751 F.3d 1244, 1255 (11th Cir. 2014) (quoting *United States v. Owen*, 858 F.2d 1514, 1516–17 (11th Cir.1988)).  However, when a defendant does not object to a Rule 11 violation in the district court, we will review for plain error only.  *Id.* at 1251.  In order to demonstrate this plain error, the defendant must demonstrate that: (1) there was error; (2) the error was plain; and (3) the error affected his substantial rights.  *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1285-86 (11th Cir. 2015) If these elements are satisfied, we may reverse the error only if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.*

Here, we conclude that the district court did not commit either clear error or plain error when it determined that there was a sufficient factual basis for Rodriguez's guilty plea because the factual proffer provided sufficient evidence for the district court to reasonably find that Rodriguez was guilty of the charges in the superseding indictment.  *See Rodriguez*, 751 F.3d at 1255; *see also Puentes-Hurtado*, 794 F.3d at 1287 (holding that knowing participation in a conspiracy can be shown through proof of surrounding circumstances, such as acts committed by the defendant that furthered the purpose of the conspiracy).  Accordingly, we affirm the district court's acceptance of the guilty plea.

II.

Rodriguez argues that the district court erred when it denied his motion to withdraw his guilty plea because he had alleged sufficient facts to justify such a withdrawal.   Rodriguez argues that his change of plea was unknowing and involuntary because the government had used information in violation of *Kastigar*[1] and his attorney had provided ineffective assistance of counsel.

We review a district court's denial of a request to withdraw a guilty plea for abuse of discretion.  *United States v. Freixas*, 332 F.3d 1314, 1316 (11th Cir. 2003). "It is well settled, however, that there is no absolute right to withdraw a guilty plea prior to imposition of a sentence." *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988).  The decision to grant a withdrawal is left to the sound discretion of the district court and we may only reverse if a denial was arbitrary or unreasonable.  *Id.* Under Rule 11, a defendant may withdraw his guilty plea if he can show a "fair and just reason" for requesting the withdrawal.  Fed. R. Crim. P. 11(d)(2)(B).

In determining whether a defendant has met his burden of showing a "fair and just reason" to withdraw his guilty plea, the district court may consider the totality of circumstances surrounding the plea, including: "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be

---

[1] *Kastigar v. United States*, 406 U.S. 441 (1972).

4

prejudiced if the defendant were allowed to withdraw his plea." *Buckles*, 843 F.2d at 471-72 (internal citation omitted). If the first two factors weigh against a defendant, the district court need not give "considerable weight" or "particular attention" to the remaining factors. *See United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987).

When analyzing a challenge under Rule 11, there is a strong presumption that statements made during the plea colloquy are true. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). A defendant may not withdraw his guilty plea based on dissatisfaction with an anticipated sentence and we may consider the timing of a defendant's motion to withdraw his guilty plea to determine the true motive for withdrawal. *See Gonzalez-Mercado*, 808 F.2d at 801.

We will "not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record." *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *see also United States v. Souder*, 782 F.2d 1534, 1539-40 (11th Cir. 1986) (stating that this issue must be raised by a collateral attack in district court, such as an action under 28 U.S.C. § 2255). An exception exists in rare instances where the record is sufficiently developed to allow review on direct appeal. *United States v. Tyndale*, 209 F.3d 1292, 1294 (11th Cir. 2000).

As an initial matter, we will not consider any of Rodriguez's claims of ineffective assistance of counsel because the record is not sufficiently developed to address this issue on direct appeal. *See Bender*, 290 F.3d at 1284. Here, the district court did not abuse its discretion when it denied Rodriguez's motion to withdraw his guilty plea because Rodriguez failed to present a "fair and just reason" for the withdrawal of his guilty plea. *See Buckles*, 843 F.2d at 471-72. Moreover, the district court's decision to deny the withdrawal of the guilty plea is neither arbitrary nor unreasonable. *See id.* During the plea colloquy, Rodriguez swore under oath that he was satisfied with the representation and advice of his attorneys, that he had a full opportunity to discuss the charges, that it was his intention to plead guilty to all the charges, that he knew his sentence might be more severe than anticipated, and that he had reviewed and signed the factual proffer. Rodriguez's claim that ADB-FUBINACA was not a controlled substance or controlled substance analogue is not supported by the record, as he conceded these facts in the factual proffer and the record evidence demonstrates that ADB-FUBINACA was added to the list of schedule I controlled substances on April 10, 2017, and before then, it was substantially similar to AB-FUBINACA, a controlled substance. Accordingly, we affirm the district court's denial of the motion to withdraw the guilty plea.

III.

Rodriguez argues that the district court erred when it did not grant his motions for recusal because the recusal order from 1994 was still applicable and, alternatively, the same reasons for recusal in 1994 still exist in this case because Judge Ungaro served on the Southern District of Florida at the same time as Judge Highsmith.

"Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings." *United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003). The denial of a motion for recusal pursuant to 28 U.S.C. § 455(a) is a "pretrial defect which is sublimated within a guilty plea" such that a defendant waives the right to appeal the denial when he has entered an unconditional guilty plea. *Id.* at 1322 Section 455(a) provides that: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). When we review a § 455(a) motion, the standard "is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality . . . and any doubts must be resolved in favor of recusal." *Patti*, 337 F.3d at 1322 (internal quotation marks and citations omitted).

Here, we conclude that the plain wording of the 1994 recusal order which Rodriguez seeks to enforce demonstrates that the order applied only to the proceeding for which it was issued. Moreover, Rodriguez waived any argument concerning his § 455(a) motion when he entered a voluntary and unconditional guilty plea in the district court. *See Patti*, 337 F.3d at 1320. Accordingly, we affirm the district court's denial of the motions to recuse.

IV.

Rodriguez argues that the district court erred when it denied his motion to suppress evidence because the government learned of the location of the storage unit through a breach of attorney-client privilege and the government engaged in coercive behavior to procure consent from his attorney to search the storage unit. He also argues that the government lacked probable cause to search the storage unit and no exigent circumstances existed at the time of the search and seizure.

Generally, the "district court's denial of a motion to suppress is a mixed question of law and fact." *United States v. Barsoum*, 763 F.3d 1321, 1328 (11th Cir. 2014). Accordingly, "we review a district court's factual findings for clear error and review its application of law to the facts *de novo*." *Id.* However, a defendant waives the right to challenge a district court's ruling on a motion to suppress after he enters an unconditional guilty plea. *United States v. McCoy*, 477

8

F.2d 550, 551 (5th Cir. 1973); *see also United States v. Charles*, 757 F.3d 1222, 1227 n.4 (11th Cir. 2014).

Here, Rodriguez waived the right to appeal the district court's denial of his motion to suppress evidence when he entered a voluntary and unconditional guilty plea. *See McCoy*, 477 F.2d at 551. Accordingly, we affirm the district court's denial of the motion to suppress.

V.

Rodriguez argues that the district court erred in applying the two-level enhancement under U.S.S.G. § 2D1.1(b)(15)(A) because the record clearly demonstrates that he did not maintain the storage facility for the purpose of manufacturing or distributing a controlled substance.

We review for clear error a district court's findings of fact which underlie its determination that a sentencing enhancement applies. *United States v. Duperval*, 777 F.3d 1324, 1331 (11th Cir. 2015). Thus, we will review a district court's determination of whether a defendant maintained a premises for the manufacture or distribution of drugs for clear error. *United States v. George*, 872 F.3d 1197, 1205 (11th Cir. 2017). A district court's factual finding is clearly erroneous when, after a review of the evidence, we are left with "a definite and firm conviction a mistake has been made." *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015).

Section 2D1.1(b)(12) of the 2016 Sentencing Guidelines provides that: "If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by 2 levels." U.S.S.G. § 2D1.1(b)(12) (2016). This two-level increase applies to a defendant "who knowingly maintains a premises . . . for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution." *Id.* 2D1.1, cmt. n.17. When determining whether the defendant "maintained" the premises, courts should consider: (1) "whether the defendant held a possessory interest in (e.g., owned or rented) the premises;" and (2) "the extent to which the defendant controlled access to, or activities at, the premises." *Id.* The Sentencing Guidelines further provide that:

> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

*Id.*

Here, the district court did not clearly err when it determined that Rodriguez maintained the storage unit for the purpose of manufacturing or distributing a controlled substance because the government provided sufficient evidence to support a finding that one of the primary purposes of the storage unit was to store

10

ADB-FUBINACA before distribution in the drug trafficking scheme. *See* U.S.S.G. § 2D1.1, cmt. n.17. Reviewing the evidence on the record, one is not left with a "definite and firm conviction a mistake has been made." *See Dimitrovski*, 782 F.3d at 628. Accordingly, we affirm the district court's determination that the enhancement was applicable.

## VI.

Rodriguez argues that the two-level enhancement under U.S.S.G. § 2D1.1(b)(15)(A), for using friendship and affection to involve another individual in the illegal conspiracy, is inapplicable because the mere existence of a romantic relationship is insufficient to support the enhancement and there was no evidence that he actively played on Lucia Mendez's ("Mendez") affection or emotions to get her to participate in the drug scheme.

We review for clear error a district court's findings of fact which underlie its determination that a sentencing enhancement applies. *Duperval*, 777 F.3d at 1331. A district court's factual finding is clearly erroneous when, after a review of the evidence, we are left with "a definite and firm conviction a mistake has been made." *Dimitrovski*, 782 F.3d at 628. "The government bears the burden of establishing the facts necessary to support a sentencing enhancement by a preponderance of the evidence." *Id.* The preponderance-of-the-evidence standard "simply requires the

11

trier of fact to believe that the existence of a fact is more probable than its nonexistence*." United States v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004).

The 2016 Sentencing Guidelines provide for a two-level sentencing enhancement if a defendant received an adjustment under § 3B1.1 and:

> (A)    (i) the defendant used fear, impulse, friendship, affection, or some combination thereof to involve another individual in the illegal purchase, sale, transport, or storage of controlled substances, (ii) the individual received little or no compensation from the illegal purchase, sale, transport, or storage of controlled substances, and (iii) the individual had minimal knowledge of the scope and structure of the enterprise[.]

U.S.S.G. § 2D1.1(b)(15)(A).

We afford substantial deference to the factfinder's credibility determinations. *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012). We will accept a district court's credibility determination "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).

Here, the district court did not commit a clear error when it determined that Rodriguez used friendship and affection to involve Mendez in the drug trafficking conspiracy because there was sufficient evidence on the record to support the district court's finding. Mendez testified that she had never been involved in any criminal activities before entering her relationship with Rodriguez and that she believed Rodriguez used their relationship and psychological manipulation to involve her in

12

the conspiracy. Importantly, the district court also found Mendez's testimony to be credible and without contradiction, and we will not overturn that determination because there is no evidence that this finding was so improbable that no reasonable factfinder could accept it. *See Ramirez-Chilel*, 289 F.3d at 749. Accordingly, we affirm the district court's determination that the enhancement was applicable.

VII.

Rodriguez argues that the district court erred when it included the weight of the carrier medium in its calculation of the weight of the controlled substance because it leads to the absurd result of disproportionate sentences. He also argues that the district court failed to consider treating the carrier medium in this case in the same manner that the sentencing guidelines treat blotter paper when calculating the weight of LSD. Moreover, he argues that the carrier medium shouldn't be included in the weight calculation because the heavy cardstock paper is inert, not a cutting agent, its weight can consistently be determined and separated from the drug, and it does not expand the amount of drug sold nor exasperate the actual substance.

Unless otherwise specified, the weight of a controlled substance set forth in U.S.S.G. § 2D1.1(c) refers to the weight of any "mixture or substance" containing a detectable amount of the controlled substance. U.S.S.G. § 2D1.1(c)(A). Generally, the weight of a "mixture" or "substance" includes the carrier medium that contains the relevant controlled substance. *United States v. Camacho*, 261 F.3d 1071, 1073

13

(11th Cir. 2001) (citing *Chapman v. United States*, 500 U.S. 453, 461-68 (1991)). The 2016 Sentencing Guidelines provide that a "[m]ixture or substance does not include materials that must be separated from the drug itself before the drug can be used." U.S.S.G. § 2D1.1, cmt. n.1 (2016).

Our precedent provides that, when calculating the weight of a "mixture or substance" containing a detectable amount of a controlled substance, we follow the market-oriented approach set forth in *Chapman*. *Griffith v. United States*, 871 F.3d 1321, 1335 (11th Cir. 2017) (citing *Chapman*, 500 U.S. at 461). Thus, while unusable portions or waste products are not considered, "[t]he entire weight of drug mixtures which are usable in the chain of distribution should be considered in determining a defendant's sentence." *Id.*

Here, the district court did not commit a clear error by including the weight of the carrier medium when it calculated the weight of the controlled substance. The government provided evidence that the paper impregnated with ADB-FUBINACA, which was utilized in the drug trafficking operation, was either smoked or ingested by inmates to take the drug. Rodriguez provided no evidence that inmates or non-inmates could separate out the ADB-FUBINACA from the impregnated paper in order to take the drug. Following the market-oriented approach we have adopted, because the carrier paper was neither a waste product nor unusable and was used in the chain of distribution, the weight of the carrier paper should be included in the

14

calculation of the weight of the ADB-FUBINACA in this case. *See Griffith*, 871 F.3d at 1335. Accordingly, we affirm the district court's inclusion of the carrier medium in the calculation of the drug weight.

## VIII.

Rodriguez argues that the district court erred when it denied his *Kastigar* claims because the district court improperly credited the government agent's testimony that he had discovered the allegedly defective evidence through independent means. We review a *Kastigar* claim deferentially and will affirm the district court's decision unless it is clearly erroneous. *United States v. Nyhuis*, 8 F.3d 731, 741 (11th Cir. 1993). Under clear error review, we will affirm the district court's decision "so long as it is plausible in light of the record reviewed in its entirety." *United States v. Ladson*, 643 F.3d 1335, 1341 (11th Cir. 2011) (citation omitted). In *Kastigar*, the Supreme Court held that when the government wishes to prosecute a defendant who has given self-incriminating testimony under a grant of immunity, to avoid a Fifth Amendment violation, the prosecution is prohibited from "using the compelled testimony in any respect" that would "lead to the infliction of criminal penalties on the witness." *Kastigar v. United States*, 406 U.S. 441, 453 (1972). When we are presented with a *Kastigar* claim, we must "determine whether any of the evidence used against the defendant was in any way derived from his compelled immunized testimony." *United States v. Hill*, 643 F.3d 807, 877 (11th

15

Cir. 2011) Moreover, the government bears the burden of demonstrating that all of the evidence it obtained and used against the defendant was untainted by immunized testimony. *Id.*

Here, we conclude that the district court's decision that there was no *Kastigar* violation was not clearly erroneous because the government provided sufficient evidence that it obtained the allegedly tainted evidence through independent means. *See Hill*, 643 F.3d at 877. Because the district court's decision is plausible in light of the record, we will not reverse. *See Ladson*, 643 F.3d at 1341. Accordingly, we affirm the district court's determination that there was no *Kastigar* violation.

IX.

Rodriguez argues that the district court committed a clear and plain error because it randomly decided what to include in the drug amount and engaged in gross speculation and improper guess work when it determined that he was responsible for more than 1,000 kilograms of marijuana.

We review a district court's calculation of drug quantity for clear error. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). Thus, we will only disturb the district court's quantity approximation if we are left with a "definite and firm conviction that a mistake has been committed." *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012). We have held that if the amount of drugs seized does not reflect the scale of the offense, the district court must approximate

16

the drug quantity attributable to the defendant. *United States v. Dixon*, 901 F.3d 1322, 1349 (11th Cir. 2018). "In estimating the quantity, the trial court may rely on evidence demonstrating the average frequency and amount of a defendant's drug sales over a given period of time." *United States v. Reeves*, 742 F.3d 487, 506 (11th Cir. 2014). "This determination may be based on fair, accurate, and conservative estimates of the drug quantity attributable to a defendant, but it cannot be based on calculations of drug quantities that are merely speculative." *Id.* (alteration adopted) (quoting *Almedina*, 686 F.3d at 1316).

Here, the district court did not clearly err when it calculated the amount of drugs that were attributable to Rodriguez for purposes of sentencing. Because the government had only seized a portion of the mailed packages that constituted the drug trafficking operation, the district court had to approximate the drug quantity attributable to Rodriguez. *See Dixon*, 901 F.3d at 1349. Moreover, the district court was permitted to rely on evidence that demonstrated the average frequency and amount of packages and drugs that Rodriguez distributed from October 2016 to February 9, 2018. *See Reeves*, 742 F.3d at 506.

Reviewing the district court's calculation determination, we are not left with a definite and firm conviction that a mistake was committed. *See Almedina*, 686 F.3d at 1315. The calculation was based on using the average weight of intercepted packages and extrapolating that average to unseized packages that were verified.

17

Additionally, the district court's assumption that less than 15% of the unseized Barnes & Noble packages contained ADB-FUBINACA appears to be a fair and conservative estimate of the drug quantity. *See Reeves*, 742 F.3d at 506. Accordingly, we affirm the district court's calculation of the drug amount attributable to Rodriquez.

X.

Rodriguez argues that the district court abused its discretion when it issued an order which prohibited both parties from filing motions because that blanket prohibition kept him from being able to present a full defense. Moreover, the prohibition undermined the fairness and integrity of the proceedings.

When a defendant fails to object to an error before the district court, we review the argument for plain error. *United States v. Hall*, 314 F.3d 565, 566 (11th Cir. 2002). Under this standard of review, the appellant must prove: (1) an error occurred; (2) the error was plain; and (3) the error affected substantial rights. *United States v. DiFalco*, 837 F.3d 1207, 1221 (11th Cir. 2016) ("An error is plain where it is 'clear' or 'obvious.'"). If these three conditions are satisfied, we can only notice the forfeited error if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 1221 (citation omitted). "The plain error test is 'difficult to meet' and places 'a daunting obstacle before the appellant,'" such that we should only notice a forfeited error "in those circumstances in which a

18

miscarriage of justice would otherwise result." *Id.* (citations omitted). The defendant bears the burden of establishing that the plain error prejudiced him by affecting his substantial rights. *United States v. Brown*, 586 F.3d 1342, 1345 (11th Cir. 2009). To establish prejudice on plain error review, the defendant must show there is a reasonable probability that, but for the error, a different outcome would have occurred; and a reasonable probability is a probability "sufficient to undermine confidence in the outcome." *United States v. Garcia*, 906 F.3d 1255, 1267 (11th Cir. 2018)

District courts possess broad discretion to manage their dockets. *United States v. McCutcheon*, 86 F.3d 187, 190 (11th Cir. 1996). A defendant must show prejudice to establish that the district court abused this discretion. *See id.* However, this Court will not reverse an alleged constitutional error which is ultimately harmless. *United States v. Roy*, 855 F.3d 1133, 1167-68 (11th Cir. 2017).

Here, the district court did not commit a plain error by issuing the order which limited the filing of motions by both parties because, even if we were to assume that the district court committed a plain error, Rodriguez cannot demonstrate that the error affected a substantial right or that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *See DiFalco*, 837 F.3d at 1221-22. Rodriguez filed over 30 motions between the issuance of the order and the imposition of his sentence and the district court granted or denied many of these

19

motions on the merits.    Furthermore, only four of Rodriguez's motions were stricken, based on filing defects.    Thus, Rodriguez cannot demonstrate that he suffered any harm or prejudice from the district court's order, nor can he show that there was a reasonable possibility that if the order had not been issued that the outcome of this proceeding would have been altered.  *See Garcia*, 906 F.3d at 1267. Accordingly, we find that the district court did not commit a reversible error.

XI.

Rodriguez argues that the district court clearly erred when it adopted the 1:167 ratio for tetrahydrocannabinol ("THC") to convert the weight of ADB-FUBINACA to an equivalent weight of marijuana because ADB-FUBINACA is not substantially similar to THC.

Because the identification of the "most closely related substance" is a finding of fact, we review the district court's determination for clear error.  *See Duperval*, 777 F.3d 1331.   When determining the most closely related substance under the Guidelines, the district court must consider "to the extent practicable," the following factors:

> (A) Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance referenced in this guideline.

> (B) Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant,

20

depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.

(C) Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.

U.S.S.G. § 2D1.1, cmt. n.6 (2016).  Under U.S.S.G § 2D1.1, THC is converted to an equivalent weight of marijuana using a 1:167 ratio.  *Id.* cmt. n.8(D).

Here, we conclude that the district court did not commit clear error by determining that ADB-FUBINACA was most closely related to THC and that the corresponding 1:167 ratio should be utilized.  The district court's determination is sufficiently supported by expert testimony and evidence.  Furthermore, the evidence provided by Rodriguez does not establish that the district court committed a clear error but merely provides a plausible alternate finding.  *See United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").  Accordingly, we affirm the district court's determination that ADB-FUBINACA is most closely related to THC and its adoption of the 1:167 conversion ratio.

**AFFIRMED.**